# Baltimore & Ohio Railroad Company, Plff. in Err., *v.* Thomas W. Davis et al.

Where goods are attached in the hands of a common carrier previous to a notice of stoppage *in transitu*, the carrier, after he has notified the owner, is not responsible if the goods are sold under the attachment proceedings.

(Argued November 2, 1887. Decided January 3, 1888.)

October Term, 1887, No. 68, W. D., before GORDON, Ch. J., PAXSON, STERRETT, GREEN, and WILLIAMS, JJ. Error to the Common Pleas No. 1 of Allegheny County to review a judgment in favor of the plaintiffs in an action of trespass on the case. Reversed.

Case by Thomas W. Davis and Robert Moore, partners as Davis & Moore, against The Baltimore & Ohio Railroad Company.

At the trial before STOWE, P. J., the facts appeared as follows:

---

NOTE.—The right of stoppage *in transitu* is not defeated by the attachment or assignment of the goods before delivery. Jenks v. Fulmer, 160 Pa. 527, 28 Atl. 841; Hays v. Mouille, 14 Pa. 48; Bender v. Bowman, 2 Pearson (Pa.) 517. The railroad company is protected if goods are taken by virtue of legal process. Act June 13, 1874, P. L. 285.

See Holmes v. Pennsylvania R. Co. 18 W. N. C. 429, 2 Pa. Co. Ct. 345.

October 23, 1885, Davis & Moore sold to S. M. Williams, for delivery at Glencoe, Ohio (Williams to pay the freight), a rope cable and sand line and had the same shipped the same day by the Oil Well Supply Company of Philadelphia, from Philadelphia over the Baltimore & Ohio Railroad and consigned to Williams at Glencoe, Ohio. The defendant company gave to the shipper a bill of lading for the goods, which stipulated that "this contract is executed and accomplished and the liabilities of the company as common carrier thereunder terminated on the arrival of the goods at the station or depot of delivery, and the company will be liable as warehousemen only, thereafter."

The shipper delivered the bill of lading to the plaintiffs. The goods were carried to the point of consignment. Before they were delivered, however, to the consignee, the plaintiffs alleged that they discovered that Williams was insolvent, and Moore, one of the plaintiffs, testified that as soon as he had made this discovery he went to Glencoe, Ohio (October 31, 1885), and saw the company's agent at that point, produced the bill of lading and asked him if he had the goods there. The agent replied that he had; Moore then told him that he was there to give notice not to deliver the goods to Williams. The agent then informed him that he was too late, that the constable had been there that afternoon, or a short time previous, and had attached them.

Moore then tendered the money for the freight, claiming that the goods were his, and gave notice that he would stop the transit. The constable had, at that time, not actually removed the goods from the custody of the railroad company.

The constable's return, as shown by the records offered in evidence, was indorsed October 28, 1885, and declared that by virtue of the order of attachment, he went to the warehouse of the Baltimore & Ohio Railroad Company at Glencoe, and in the presence of two credible persons, he attached the property there found in the possession of the Baltimore & Ohio Railroad Company, consigned to S. M. Williams, by Davis & Moore, of Pittsburgh, Pennsylvania, and described as two coils of rope, and did then and there attach it.

The said attachment suits were so proceeded in that on November 30, 1885, a judgment was rendered before a justice, ordering that the property attached be sold for the satisfaction of the judgment rendered against Williams; and on December 17,

1885, the constable returned that, by virtue of the order, he had advertised and sold the property therein described, including the two coils of rope in the possession of the Baltimore & Ohio Railroad Company.

The plaintiff Davis testified that he also called upon the freight agent of the company, at Pittsburgh, on October 29, or 30, 1885, to see about regaining possession of the goods. The freight agent at Pittsburgh told him that he would do his best, and would telegraph in respect to the goods. One or two days afterwards Davis again called upon the freight agent at Pittsburgh, and was then informed that the goods had been attached at Glencoe. December 12, 1885, the freight agent, at Pittsburgh, notified Davis & Moore, by letter, that they could not get possession of the goods, unless they gave a bond to secure the company.

Counsel for plaintiffs proposed to show in rebuttal that after the claim of the plaintiffs upon the goods in question under the right of stoppage *in transitu,* was communicated to the railroad company, negotiations took place between the plaintiffs and the railroad company with respect to the delivery of the goods; that, pending those negotiations, nothing was done until the 12th of December, 1885, when the railroad company communicated to the plaintiffs that it would deliver the goods to them upon their filing a bond with reference to the claim of the constable, under the attachment referred to already in evidence—this, in connection with the evidence already in, for the purpose of showing that notwithstanding such negotiations, without notice to the plaintiffs, the railroad company allowed the goods in question to be taken out of its possession and sold.

Objected to as not rebuttal, and as incompetent and irrelevant. Objections overruled. [3]

The material portion of the evidence under this offer was as follows: That the plaintiffs received no communication by letter from defendant, previous to the receipt of the following letter:

Pittsburgh, Pa., December 12, 1885.

Messrs. Davis & Moore, Mfrs. Agents, Pittsburgh, Pa.:

Gentlemen: Referring to recent conversation with Mr. Davis, our attorney at Columbus returns all papers with the following notation: "If Messrs. Moore & Davis gave the bond,

as I suggested when these attachments were commenced, it will be proper to deliver them the goods."

Thus, you will see, it will be necessary to have bond before we can do anything further.

[Signed]                           Yours Truly,
                                      C. S. Wight,
                                      A. G. F. A.

That, after receiving this letter, Mr. Davis went to see Mr. Wight, who stated that he was willing to do anything necessary to get the goods; he does not recollect exactly what the conversation was; it was right along in that line; he would do what was necessary; he does not think any date was fixed at which time the bond should be given.

That at a conversation with Mr. Wight, previous to this letter of December 12, the best understanding plaintiffs could get was that everything Mr. Wight was doing he had to submit to parties at Columbus.    The next communication plaintiffs got after this conversation was the letter of December 12.

After December 12, the next time plaintiffs heard from Mr. Wight was by the letter of December 28, 1885, as follows:

I am directed by Judge Collins, our attorney at Columbus, to notify you that the cordage, which we have been holding at Glencoe, has been taken possession of by the officer, by whom the attachments were levied, and that it is now out of our possession; and if you wish to do anything to regain it, you had better go to Glencoe and attend to it in person.

The cordage was sold on an order of execution, and the officer would have taken the property by force, had our agent not delivered it to him when demanded.

Regretting the unfortunate circumstances and trusting you may be able to make yourselves whole, I remain,

[Signed]                           Yours Truly,
                                      C. S. Wight,
                                      A. G. F. A.

Counsel for defendant requested the court to charge:

That under all the evidence the verdict must be for the defendant.

*Ans.* Refused.    [1]

The court charged, *inter alia,* as follows:

But it is alleged, and upon that I think there is some testimony for you to pass upon, that after the plaintiffs were notified of the attachment, there was some correspondence between them and the defendant's agents through which it is said the plaintiffs were induced to forego their right and their duty to look after the goods, and being misled were prevented from doing what they otherwise were bound to do—look after their property. The defendant, as I have said, asks me to say that there is no evidence on which you can determine that fact. I do not think, as it strikes me now, I ought to take that responsibility; and I, therefore, submit the question to you. [2]

The specifications of error are indicated above by figures.

*John S. McCleave,* for plaintiff in error.—The bill of lading given in this case being a Pennsylvania contract, the rights of the respective parties thereunder are governed by the act of June 13, 1874, P. L. 285.    Lawson, Carr. § 211.

The above statute, however, only expresses the common-law rule upon the subject.    Dyke v. Erie R. Co. 45 N. Y. 113, 6 Am. Rep. 43; Curtis v. Delaware, L. & W. R. Co. 74 N. Y. 116, 30 Am. Rep. 271; Armour v. Michigan C. R. Co. 65 N. Y. 111, 22 Am. Rep. 603; Lawson, Carr. §§ 17, 18; Pingree v. Detroit, L. & N. R. Co. 66 Mich. 143, 11 Am. St. Rep. 479, 33 N. W. 298; Merchants' Nat. Bank v. Shaw, 2 W. N. C. 542; *Re* Conrad, 8 Phila. 147, Fed. Cas. No. 3,126; Brooke v. New York, L. E. & W. R. Co. 108 Pa. 529, 56 Am. Rep. 235, 1 Atl. 206.

The court below in its charge recognized the rule declared in the statute and the decisions, but still left it to the jury to find whether or not we had promised the plaintiffs (without consideration) to deliver the goods up to them in defiance of the judicial process under which they were held, or to contest the suits ourselves to a successful issue; and so, by the promise of the one thing or the other, the plaintiffs had been induced to lie down and take no watch for themselves.

This is an action for nondelivery; and even if such promise or promises upon our part would render us liable to this form of action, yet we contend that there was not a particle of evidence to submit to the jury upon the question.

*John S. Ferguson,* for defendants in error.—The transit was not at an end under the facts of this case. James v. Griffin, 2 Mees. & W. 623; Jackson v. Nichol, 5 Bing. N. C. 508; Benjamin, Sales, p. 1089 *et seq.*

The holding until freight was paid is no more than a compliance with the original contract; that is, to deliver in due course to the consignee on payment of freight. The railroad company remained a mere agent for expediting the goods to their original destination. Whitehead v. Anderson, 9 Mees. & W. 518.

The purchaser had a right to decline to receive the goods, on the ground of his failure in business; and they could not then be attached by his creditors. Kahnweiler v. Buck, 2 Pearson (Pa.) 69.

A consignor can exercise the right of stoppage *in transitu* at any time while the goods are in the cars of the carrier or in his warehouse, without orders from the consignee; a sheriff's levy does not devest this right. Bender v. Bowman, 2 Pearson (Pa.) 517.

OPINION BY MR. JUSTICE GREEN:

We find ourselves unable to discover anything in the evidence in this case sufficient to establish a liability on the part of the defendant. The writs of attachment were served before any notice of stoppage *in transitu* was given; and the learned court below was clearly and rightly of opinion that on that part of the case there was no liability of the defendant in this action; but the court thought that there was something in the correspondence which misled the plaintiffs to their hurt, so that they were induced to forego their right and duty to look after the goods in question.

We cannot so understand the correspondence, or any of the testimony. The plaintiffs knew perfectly well that the goods were under attachment at all times after October 30 or 31. They knew also that the defendant had declined to surrender them into their possession on account of the attachment. Surely, diligence on their part became a duty at once, if they intended to get the goods from the defendant; they could not lie by supinely in the expectation that the defendant, who had no interest in their behalf, would surrender the goods in defiance of the attachment, unless it was fully indemnified. But it does

not appear either in the correspondence or in the testimony, that they ever offered to indemnify the defendant in any way for disregarding the legal process. However, after delaying till December 12, they were then distinctly notified by the letter of that date that a bond must be given before anything further could be done. But still they paid no attention and did nothing, and then the attachment proceedings came to an end by the sale of the property. Surely, immediately after December 12, it was their duty to take active steps in their own behalf; and it would be a perversion of justice to hold the defendant responsible for a delay which, so far as we can see, was purely the fault of the plaintiffs.

We discover nothing in the letters or in the testimony tending to mislead the plaintiffs, and therefore think it was error to commit that question to the jury.

Judgment reversed and new *venire* awarded.